# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### BRUNSWICK DIVISION

FILED
Scott L. Poff, Clerk
United States District Court

*By staylor at 3:07 pm, Sep 29, 2017*

JAMES DANIELSGALE,

      Movant,

    v.

UNITED STATES OF AMERICA,

      Respondent.

CIVIL ACTION NO.: 2:16-cv-36

(Case No.: 2:15-cr-4)

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Movant James Danielsgale[1] ("Danielsgale"), who is currently housed at the Federal Correctional Institution in Jesup, Georgia, has filed a Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255. (Doc. 1.) The Government filed a Response, (doc. 6), and Danielsgale filed two Replies, (docs. 7, 8). For the reasons which follow, I **RECOMMEND** the Court **DENY** Danielsgale's Motion and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal. I also **RECOMMEND** the Court **DENY** Danielsgale a Certificate of Appealability and **DENY** Danielsgale *in forma pauperis* status on appeal.

## BACKGROUND

Danielsgale was charged by Information with one count of possession of a stolen firearm, in violation of 18 U.S.C. § 922(j).[2] Information, United States v. Danielsgale, 2:15-cr-4 (S.D.

---

[1] Danielsgale's surname is "Samuels-Danielsgale", (doc. 25, p. 4), but the Court refers to him as "Danielsgale" throughout this Report and Recommendation, as that is the name he used to file this Motion.

[2] Danielsgale was originally charged by Indictment with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g), and conspiracy to obstruct justice, in violation of 18 U.S.C. § 1512(k).

Ga. Feb. 20, 2015), ECF No. 1.  Danielsgale faced a potential sentence of not more than ten (10) years' imprisonment on this count.  Penalty Certification, <u>United States v. Danielsgale</u>, 2:15-cr-4 (S.D. Ga. Feb. 20, 2015), ECF No. 2.   The Court appointed attorney Steven Blackerby to represent Danielsgale on this charge.

Danielsgale and his attorney, Mr. Blackerby, were able to negotiate a plea agreement with the Government whereby Danielsgale agreed to plead guilty to the one count of the Information.  The plea agreement included a provision whereby Danielsgale waived his rights to directly appeal his conviction and sentence.  That provision stated:

> Defendant entirely waives his right to a direct appeal of his conviction.  The defendant agrees to waive his right to appeal the sentence.  The only exceptions are that the Defendant may file a direct appeal of his sentence if (1) the court enters a sentence above the statutory maximum[;] (2) the court enters a sentence above the advisory Sentencing Guidelines range found to apply by the court at sentencing; or (3) the Government appeals the sentence.  Absent those exceptions, the Defendant explicitly and irrevocably instructs his attorney not to file an appeal.

Plea Agreement, <u>United States v. Danielsgale</u>, 2:15-cr-4 (S.D. Ga. Feb. 26, 2015), ECF No. 11, pp. 5–6.  Danielsgale also waived his "right to collaterally attack his conviction and sentence on any ground and by any method, including but not limited to a 28 U.S.C. § 2255 motion[]" as part of his plea agreement.  <u>Id.</u> at p. 6.  The only exception to the complete waiver of his collateral attack rights was that Danielsgale could attack his sentence based on a claim of ineffective assistance of counsel.  <u>Id.</u>

---

Indictment, <u>United States v. Danielsgale</u>, 2:14-cr-29 (S.D. Ga. Nov. 6, 2014), ECF No. 3.  He faced a potential sentence of not more than ten (10) years imprisonment on the felon-in-possession count (unless he had three qualifying previous convictions, in which case he faced a sentence of not less than fifteen (15) years or more than life) and not more than five (5) years' imprisonment on the conspiracy count. Penalty Certification, <u>United States v. Danielsgale</u>, 2:14-cr-29 (S.D. Ga. Nov. 6, 2014), ECF No. 4.  The Court appointed Steven Blackerby to represent Danielsgale on these charges.  CJA 20, <u>United States v. Danielsgale</u>, 2:14-cr-29 (S.D. Ga. Nov. 24, 2014), ECF No. 11.  The Government later dismissed the two-count Indictment against Danielsgale after his entry of a guilty plea to the above-described Information. J., <u>United States v. Danielsgale</u>, 2:14-cr-29 (S.D. Ga. June 25, 2015), ECF No. 37.

Danielsgale appeared before the Honorable Lisa Godbey Wood for his change of plea, or Rule 11, proceeding.  Judge Wood addressed Danielsgale and informed him the purpose of the hearing was to ensure that he understood the case that was pending against him, that he understood all of the rights he was waiving or giving up by pleading guilty, that there was a factual basis for the guilty plea, and that, after consultation with Mr. Blackerby, pleading guilty was what Danielsgale wanted to do.  Change of Plea Hr'g Tr., United States v. Danielsgale, 2:15-cr-4 (S.D. Ga. Mar. 23, 2016), ECF No. 25, pp. 2–3.  Judge Wood inquired whether anyone had forced Danielsgale to offer to plead guilty, and he said no one had done so and that pleading guilty was what he wanted to do.  Id. at p. 3.  Judge Wood told Danielsgale that he did not have to plead guilty to the Information but had a right to have his case presented for indictment to a grand jury.  Judge Wood also told Danielsgale that, if he chose to persist in his not guilty plea, he would have the right to: a public and speedy trial by jury; a presumption of innocence during that trial; the assistance of trial counsel; see, hear, confront, and cross-examine the Government's witnesses and evidence; call witnesses on his behalf; and testify himself or remain silent.  Id. at pp. 7–9.  However, Judge Wood cautioned Danielsgale he would be waiving these rights if he pled guilty and she accepted that guilty plea.  Id. at p. 9.

Danielsgale stated he understood.  Danielsgale also stated he and Mr. Blackerby reviewed the Information together, that he had had the opportunity to talk to Mr. Blackerby about the facts and the law pertaining to his case, as well as about the proposed plea agreement and the United States Sentencing Guidelines in general terms.  Id. at p. 10.  Danielsgale stated that he was satisfied with Mr. Blackerby's representation and had no complaints about his representation whatsoever.  Id.

Judge Wood reviewed the Information with Danielsgale, the essential elements of the crime for which he was charged, and that the Government would have to prove those essential elements.  Id. at pp. 10–11.  Judge Wood advised Danielsgale of the maximum sentence she could impose.  Id. at p. 12.  Moreover, Judge Wood explained to Danielsgale that, in imposing a sentence upon him, she would have to take into consideration the advisory Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.  Id. at pp. 12–13.

Judge Wood asked the Assistant United States Attorney ("AUSA") to summarize the provisions of the plea agreement.  AUSA Shane Mays stated:

> Your Honor, in summary the plea agreement provides that[,] upon Mr. Samuels-Danielsgale waiving the indictment and pleading guilty to Count 1 of the information[,] the Government will recommend a three-level reduction for acceptance of responsibility[,] provided the Defendant truthfully admits the conduct comprising the offense of conviction, . . . and has not engaged in any criminal conduct subsequent to his arrest.

> The Defendant will further acknowledge at the time of the plea the truth of the factual basis contained within the plea agreement, will pay on the date of sentencing any assessments imposed by [t]he Court and the Defendant will consent to the waiver of appeal, which is in Paragraph 9 of the agreement, Your Honor, and the Government will also dismiss the indictment that is pending in CR2:14-29[.]

Id. at p. 14.  Judge Wood asked Danielsgale if AUSA Mays' summarization of the plea agreement was consistent with the plea agreement he signed, and he stated it was.  Id. at p. 15.  Danielsgale also stated he read the plea agreement, and Mr. Blackerby answered any questions he may have had before he signed the agreement.  Danielsgale affirmed that no one had made him any promises regarding the outcome of his case, other than the provisions contained in the plea agreement.  Id.

Judge Wood then specifically addressed the direct appeal waiver with Danielsgale:

> As Mr. Mays mentioned, there is a provision in this plea agreement that you're proposing that waives your appellate rights.  Specifically, it states: "Defendant

> entirely waives his right to appeal his conviction and the Defendant agrees to waive his right to appeal the sentence."  Now there are three exceptions to that waiver of your direct appeal rights.  That is[,] if and only if one of these three events were to occur, you could appeal your conviction and sentence directly, but only if one of these three were to happen.  Number 1, if I were to sentence you above the statutory maximum, then you could appeal that directly, or Number 2, if I were to sentence you above the advisory guideline range as found by me, then you could appeal that directly; or Number 3, if the Government were to file a direct appeal, then you, too, could file a direct appeal[.  B]ut other than those three exceptions, by virtue of this plea agreement you waive all other direct appeal rights.  Do you understand that?

Id. at pp. 15–16.  Danielsgale stated he understood this provision.  Judge Wood also stated that the proposed plea agreement contained a waiver of Danielsgale's collateral attack rights.  Judge Wood noted this provision specifically states:

> "Defendant entirely waives his right to collaterally attack his conviction and sentence on any ground and by any method[,] including but not limited to[,] a 28 U.S.C. Section 2255 motion," and the only exception to that waiver of collateral attack rights is you are entitled to collaterally attack based on a claim of ineffective assistance of counsel.  Do you understand that waiver?

Id. at p. 16.  Danielsgale expressed his understanding of this provision and stated he had no questions about that provision.  Id.

Judge Wood then asked Danielsgale whether he wished to still plead guilty to Count One of the Information because he was in fact guilty of that count, and he answered in the affirmative.  Id. at p. 17.  Judge Wood also asked Danielsgale whether he understood the rights and privileges he was waiving if she accepted his plea, and he said he did.  Judge Wood determined Danielsgale's offer to plead guilty was "knowing[]" and "voluntary[.]"   Id. Danielsgale agreed.  The Government provided a factual basis for Danielsgale's plea of guilty by calling Alcohol, Tobacco, Firearms and Explosives ("ATF") Special Agent Todd Kennedy to testify.  Id. at pp. 18–20.

Agent Kennedy testified that Brunswick Police Department Officer Jessica Whittle-Frazier observed Danielsgale driving a white Chevrolet Lumina with a "faulty license pla[t]e[]" on March 8, 2014.  Id. at p. 19.  Officer Whittle-Frazier initiated a traffic stop on Albany Street in Brunswick, Georgia.   While Officer Whittle-Frazier was writing a citation to Danielsgale, Officer Kondo and his canine partner, Bob, arrived on the scene to assist Officer Whittle-Frazier. Bob conducted an open air search of and around the car, and he had two (2) positive alerts on the car.  Id.  Officer Whittle-Frazier then conducted a search of the car, found a Taurus .45 caliber pistol under the rear seat of the car, and took possession of the gun.[3]  Special Agent Jim Turner later interviewed the owner of the car, Shakerria Mitchell, who stated she let Danielsgale borrow her car, but she disavowed possession of the recovered firearm.  Id.  Special Agent Kennedy testified that recorded conversations from a jail indicated Danielsgale knowingly possessed this firearm.   In addition, Special Agent Kennedy testified that Mr. Blackerby informed law

---

[3]  The relevant portions of the offense conduct contained in the PSI are consistent with Special Agent Kennedy's testimony and are as follows:

> At approximately 12:06 a.m. on March 8, 2014, Officer Jessica Whittle-Frazier, Brunswick (Georgia) Police Department (BPD), conducted a traffic stop on a vehicle driven by James Danielsgale.  During the traffic stop, other BPD officers arrived at the scene, including an officer with a drug detection canine.  The canine was deployed at the scene of the traffic stop and alerted to the presence of drugs in the vehicle Danielsgale was driving, a 1997 Chevrolet Lumina sedan.  During a search of the Lumina, officers recovered a loaded Taurus .45 caliber pistol (Serial Number NCR73750).  The firearm was concealed beneath the rear passenger seat of the vehicle. The seat was loose and was not attached to the body of the vehicle.

> During the search of the Lumina, Shakerria Mitchell arrived at the scene of the traffic stop.  Mitchell identified herself as Danielsgale's girlfriend and advised that she had loaned the Lumina to Danielsgale at approximately 4:30 p.m. on March 7, 2014, so that he could drive to work on St. Simons Island, Georgia.  Mitchell stated that she did not own the firearm recovered from the Lumina and stated that she was not aware that the firearm was in the Lumina.

(PSI, ¶¶ 5–6.)

enforcement personnel that Danielsgale had reason to believe this firearm was stolen at the time he bought it with cash.  Id. at p. 20.

After hearing from Danielsgale again, during which time Danielsgale agreed with the Government's factual basis, Judge Wood accepted Danielsgale's plea and adjudged him guilty of Count One of the Information.  Id. at p. 21.  Judge Wood advised Danielsgale that a Probation Officer would prepare a Presentence Investigation report ("PSI"), and the Court would schedule a sentencing hearing after the PSI was disclosed to the Government and to Mr. Blackerby.  Id.

Judge Wood sentenced Danielsgale after United States Probation disclosed the PSI to the parties and the Court.  Min. Entry & J., United States v. Danielsgale, 2:15-cr-4 (S.D. Ga. June 25 & 26, 2015), ECF Nos. 14, 15.  Mr. Blackerby filed the executed Notice of Post-Conviction Consultation Certification.  In this Notice, Danielsgale certified that he was of sound mind and able to comprehend all that Mr. Blackerby advised him regarding his right to appeal his conviction and sentence and the appellate process.  In addition, Danielsgale initialed the blank next to the option that he decided not to appeal, and his attorney explained the consequences of failing to do so, including the "waiver of his right to complain about the process that led up to [his] conviction," including filing a 28 U.S.C. § 2255 motion.  Not., United States v. Danielsgale, 2:15-cr-4 (S.D. Ga. July 7, 2015), ECF No. 17.  Danielsgale then filed this Section 2255 Motion on March 9, 2016.  (Doc. 1.)

## DISCUSSION

In his Motion, Danielsgale contends Mr. Blackerby rendered ineffective assistance by failing to file a motion to suppress evidence relating to the firearm seized from the vehicle he was driving.  (Doc. 1, p. 4.)  He relatedly avers his guilty plea was involuntary.

The Government alleges Danielsgale's claims are barred by the collateral attack waiver contained in his plea agreement.[4]  (Doc. 6, p. 7.)  In the alternative, the Government maintains Danielsgale's ineffective assistance claims fail because Danielsgale's Fourth Amendment claim is without merit, and Danielsgale's plea was knowing and voluntary.  (Id. at p. 12.)

## I.      Danielsgale's Ineffective Assistance of Counsel Claims

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result."  Strickland v. Washington, 466 U.S. 668 (1984).  A convicted defendant must meet two components to establish that counsel's assistance was so defective as to require reversal of a conviction or sentence:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland, 466 U.S. at 687.  "Because the [petitioner] must prove both deficiency and prejudice, a [petitioner's] failure to prove either will be fatal to his claim."  Johnson v. Scott, 68 F.3d 106, 109 (5th Cir. 1995).  Under the Strickland test, the petitioner must initially show that counsel's representation fell below an "objective standard of reasonableness."  Strickland, 466 U.S. at 688.

---

[4]  The Government's allegation in this regard overlooks the fact that, in Danielsgale's plea agreement, there is a provision allowing for him to bring an ineffective assistance claim as an exception to his collateral rights waiver.  Plea Agreement, United States v. Danielsgale, (S.D. Ga. Feb. 22, 2015), ECF No. 11, p. 6; see also Corley v. United States, No. 4:12-CV-0228-HLM, 2012 WL 12951540, at *7 (N.D. Ga. Nov. 19, 2012) ("The Eleventh Circuit, however, has recognized that a sentence appeal waiver will not preclude a defendant from attacking the plea agreement itself or from raising IAC claims relating to the plea agreement itself in the absence of specific language to the contrary. . . Here, Petitioner asserts that his Plea Agreement was not knowingly and voluntarily made, and therefore is invalid because his counsel provided ineffective assistance in connection with proceedings that led directly to the plea (the Motions to Suppress).  The Court therefore finds that the Plea Agreement's waiver provision will not bar Petitioner's § 2255 Motion, and the Court consequently must address the merits of Petitioner's claims.") (internal citations omitted).

"While it need not be errorless, counsel's advice 'must be within the realm of competence demanded of attorneys representing criminal defendants.'" Jones v. White, 992 F.2d 1548, 1557 (11th Cir. 1993) (quoting Stano v. Dugger, 921 F.2d 1125, 1151 (11th Cir 1991)).  In making such an evaluation, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.  The effectiveness or ineffectiveness of counsel must be evaluated by consideration of the totality of the circumstances. Stanley v. Zant, 697 F.2d 955, 962 (11th Cir. 1983).  "If a petitioner cannot satisfy one prong, we need not review the other prong." Duhart v. United States, 556 F. App'x 897, 898 (11th Cir. 2014).  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690.

Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice. Strickland, 466 U.S. at 691–92.  In order to establish actual prejudice, a petitioner must show that "there is a reasonable probability that but for the attorney's unprofessional errors, the result of the proceeding would have been different." Armstead v. Scott, 37 F.3d 202, 207 (5th Cir. 1994).  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. Strickland, 466 U .S. at 694.  "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011).

Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been

different absent the excludable evidence in order to demonstrate actual prejudice.  Kimmelman v. Morrison, 477 U.S. 365, 375 (1986).  "Only those habeas petitioners who can prove under Strickland that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial without the challenged evidence."  Id. at 382.  In cases like this one, where a movant "faults his lawyer for failing to pursue a motion to suppress prior to entering a plea, both the deficient performance and prejudice prongs of Strickland turn on the viability of the motion to suppress.  This is because a lawyer's performance only falls outside the range of competence demanded of counsel if []he did not pursue a motion to suppress that would have affected the outcome of the case had the defendant rejected the plea and proceeded to trial."  Arvelo v. Sec'y, Fla. Dep't of Corr., 788 F.3d 1345, 1348 (11th Cir. 2015) (citing Premo v. Moore, 562 U.S. 115, 124 (2011) (addressing Strickland's performance prong and stating that the relevant question was whether "no competent attorney would think a motion to suppress would have failed")); Lynch v. Sec'y, Fla. Dep't of Corr., 776 F.3d 1209, 1219 n.6 (11th Cir. 2015) ("Hill[ v. Lockhart, 474 U.S. 52 (1985),] makes clear that the prejudice inquiry in a case like this turns largely on an assessment of whether the defense likely would have changed the outcome at trial.").  When "a defendant alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial, we do not ask whether, had he gone to trial, the result of that trial 'would have been different' than the result of the plea bargain."  Lee v. United States, ___ U.S. ___, 137 S. Ct. 1958, 1965 (June 23, 2017).  "Instead, when a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

Spriggs v. United States, No. 15-10659, 2017 WL 3411796, at *2 (11th Cir. Aug. 9, 2017) (internal citation and punctuation omitted).

### A.      Danielsgale's Fourth Amendment Claim

Danielsgale contends he was subjected to an unreasonable search and seizure, and the evidence seized from his vehicle would have been suppressed had Mr. Blackerby filed a much-warranted motion to suppress.   (Doc. 2, pp. 5–6.)   Danielsgale asserts it is clear officers unlawfully prolonged the otherwise lawful traffic stop to allow for the canine to conduct an open air sniff.   (Id. at p. 7.)   Specifically, Danielsgale alleges Officer Whittle-Frazier initiated a traffic stop based on her observation of a defective tag, and Danielsgale provided her with his license and the registration and insurance for the car.   Officer Whittle-Frazier called in this information to the dispatcher, and the dispatcher notified Officer Whittle-Frazier two minutes later that the vehicle was insured, the registration was valid, and there were no active warrants on Danielsgale. (Id. at p. 3.)   Danielsgale contends that, instead of issuing a citation for the defective license plate at that time, Officer Whittle-Frazier approached him again and asked for his consent to search the vehicle.   After Danielsgale declined to give consent, he states Officer Anthony Trollinger, another officer who was at the scene, instructed him to turn off the car.   (Id.)   Danielsgale contends Corporal Sapp arrived at the scene of the traffic stop seventeen (17) minutes after Officer Whittle-Frazier initiated it.   After arriving, Corporal Sapp called Officer Kondo to the scene, who arrived five (5) minutes later with his canine partner, Bob.   (Id. at p. 4.)   Bob conducted a free air sniff while Danielsgale was still awaiting receipt of the traffic ticket. Danielsgale states Officer Whittle-Frazier had finished writing the citation by the time Bob had concluded his free air sniff.   (Id. at pp. 4–5.)   Danielsgale concludes that, had Mr. Blackerby filed a motion to suppress and argued the traffic stop was unreasonably prolonged, the motion

would have been granted, and the firearm found as a result of the search of the car would have been suppressed.   Accordingly, Danielsgale argues, Mr. Blackerby rendered ineffective assistance by failing to file such a motion.  (<u>Id.</u> at p. 10.)

The Government responds that Danielsgale's Fourth Amendment claim is without merit. The Government points to Special Agent Kennedy's testimony at the Rule 11 hearing that the open air search of Danielsgale's car occurred while Officer Whittle-Frazier was writing the traffic citation.  (Doc. 6, p. 11.)  According to the Government, had Mr. Blackerby filed a motion to suppress the firearm recovered during the search of Danielsgale's vehicle, the Court would have denied the motion.  Thus, Danielsgale cannot show the requisite prejudice to sustain his claim.  (<u>Id.</u> at pp. 11–12.)[5]

A traffic stop, which qualifies as a seizure under the Fourth Amendment, is constitutional if it is based upon probable cause or reasonable suspicion to believe that a traffic violation has occurred.  <u>United States v. Chanthasouxat</u>, 342 F.3d 1271, 1275 (11th Cir. 2003) (quoting <u>United States v. Purcell</u>, 236 F.3d 1274, 1277 (11th Cir. 2001)); <u>United States v. Simmons</u>, 172 F.3d 775, 778 (11th Cir. 1999).  That is, "a police officer may stop a vehicle when there is . . . probable cause to believe that a driver is violating any one of the multitude of applicable traffic and equipment regulations relating to the operation of motor vehicles."   <u>United States v. Strickland</u>, 902 F.2d 937, 940 (11th Cir. 1990) (quotations and citation omitted).   "[T]he standard for determining whether probable cause exists 'is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information,

---

[5]   The Government also contends that Danielsgale's guilty plea entirely precludes his claims that his attorney rendered ineffective assistance of counsel by not filing a motion to suppress.  (Doc. 28, pp. 7–8.) However, because Danielsgale alleges that Blackerby's failure to file a motion to suppress led him to accept the guilty plea, the Court cannot simply conclude that the guilty plea bars the ineffective assistance of counsel claim.  <u>See</u> <u>Lee</u>, ___ U.S. at ___, 137 S. Ct. at 1965; <u>Spriggs</u>, 2017 WL 3411796, at *2–3 (trial counsel's performance in advising a client to plead guilty cannot be unmoored from the merits of an alleged Fourth Amendment violation).

would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" United States v. Frazier, No. CR408-146, 2008 WL 5245876, at *2 (S.D. Ga. Dec. 16, 2008) (internal citations omitted). Once a legitimate traffic stop is made, an officer "may request a driver's license and vehicle registration, run a computer check, and issue a citation" so long as the detention "last[s] no longer than is necessary to effectuate the purpose of the stop." United States v. Pruitt, 174 F.3d 1215, 1219–20 (11th Cir. 1999).

A seizure for a traffic violation justifies a police investigation of that violation. "[A] relatively brief encounter," a routine traffic stop is "more analogous to a so-called 'Terry stop' . . . than to a formal arrest." Knowles v. Iowa, 525 U.S. 113, 117 (1998) (quoting Berkemer v. McCarty, 468 U.S. 420, 439 (1984), in turn citing Terry v. Ohio, 392 U.S. 1 (1968)); see also Arizona v. Johnson, 555 U.S. 323, 330 (2009). Like a Terry stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's "mission"—to address the traffic violation that warranted the stop, Illinois v. Caballes, 543 U.S. 405, 407 (2005), and attend to related safety concerns, Rodriguez, ___ U.S. at ___, 135 S. Ct. at 1614; see also United States v. Sharpe, 470 U.S. 675, 685 (1985); Florida v. Royer, 460 U.S. 491, 500 (1983) (plurality opinion) ("The scope of the detention must be carefully tailored to its underlying justification."). "Because addressing the infraction is the purpose of the stop, it may last no longer than is necessary to effectuate th[at] purpose." Rodriguez, ___ U.S. at ___, 135 S. Ct. at 1614 (alteration in original) (citation omitted). "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." Sharpe, 470 U.S. at 686 (in determining the reasonable duration of a stop, "it [is] appropriate to examine whether the police diligently pursued [the] investigation"). A traffic stop "can become unlawful if it is

prolonged beyond the time reasonably required to complete th[e] mission" of issuing a warning ticket. Caballas, 543 U.S. at 407. "An officer, in other words, may conduct certain unrelated checks during an otherwise lawful traffic stop." Rodriguez, ___ U.S. at ___, 135 S. Ct. at 1614–15.

An officer's actions during a traffic stop must be reasonably related in scope to the circumstances that justified the stop. United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001). Conversely, a traffic stop becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission. Rodriguez, ___ U.S. at ___, 135 S. Ct. at 1612.

"When the duration of a traffic stop is 'entirely justified by the traffic offense and the ordinary inquiries incident to such a stop,' a simultaneous dog sniff of the car does not violate the Fourth Amendment." United States v. Smith, 448 F. App'x 936, 938 (11th Cir. 2011) (quoting Caballas, 543 U.S. 405). In other words, as the United States Supreme Court held in Caballas, a dog sniff conducted during a lawful traffic stop does not violate the Fourth Amendment's proscription of unreasonable seizures. Rodriguez, ___ U.S. at ___, 135 S. Ct. at 1612; Caballes, 543 U.S. at 405 (explaining that no Fourth Amendment violation occurred when, during a 10-minute traffic stop, an officer walked a drug-sniffing dog around the outside of the car while another officer wrote a citation). "A dog sniff that does not unreasonably prolong the traffic stop is not a search subject to the Fourth Amendment, and the Supreme Court has therefore rejected the notion that a traffic stop becomes unlawful based on the mere act of a dog sniff that was not supported by reasonable suspicion." United States v. Wilson, 662 F. App'x 693, 696 (11th Cir. 2016) (citing Caballes, 543 U.S. at 408–09). "Probable cause 'exists when under the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found' in the vehicle." Smith, 448 F. App'x at 939 (quoting United States v.

Tamari, 454 F.3d 1259, 1264 (11th Cir. 2006)).  Courts "have long recognized that 'probable

cause arises when a drug-trained canine alerts to drugs' even in the absence of other evidence."

Id. (quoting Tamari, 454 F.3d at 1265).

Based on the evidence of record, Officer Whittle-Frazier initiated a traffic stop of

Danielsgale due to a faulty license plate on the car he was driving.  Under Georgia law, an

improperly displayed license plate is grounds for a traffic violation:

> Unless otherwise permitted under this chapter, every vehicle required to be
> registered under this chapter, which is in use upon the highways, shall at all times
> display the license plate issued to the owner for such vehicle, and the plate shall
> be fastened to the rear of the vehicle in a position so as not to swing and shall be
> at all times plainly visible.  No person shall display on the rear of a motor vehicle
> any temporary or permanent plate or tag not issued by the State of Georgia which
> is intended to resemble a license plate which is issued by the State of Georgia.
> The commissioner is authorized to adopt rules and regulations so as to permit the
> display of a license plate on the front of certain vehicles.  It shall be the duty of
> the operator of any vehicle to keep the license plate legible at all times.  No
> license plate shall be covered with any material unless the material is colorless
> and transparent.  No apparatus that obstructs or hinders the clear display and
> legibility of a license plate shall be attached to the rear of any motor vehicle
> required to be registered in the state.  Any person who violates any provision of
> this Code section shall be guilty of a misdemeanor.

O.C.G.A. § 40-2-41; Worlds v. State, 762 S.E.2d 829, 803–31 (Ga. Ct. App. 2014).  Officer

Whittle-Frazier had probable cause to initiate the traffic stop, and thus, there was no Fourth

Amendment violation at this point.  In fact, Danielsgale does not argue that Officer Whittle-

Frazier lacked probable cause to initiate the traffic stop.  However, the Court must determine

whether the traffic stop was impermissibly extended, in violation of the Fourth Amendment

proscription against unreasonable seizures.

Danielsgale's contention—that the free air sniff violated his Fourth Amendment because

it impermissibly extended the duration of the traffic stop—is without merit and unsupported by

the record.  The evidence before the Court reveals that Bob performed an open air sniff before

the traffic stop concluded.  Specifically, Special Agent Kennedy testified during Danielsgale's Rule 11 hearing that, while Officer Whittle-Frazier was in the process of writing Danielsgale a citation, Officer Kondo arrived at the scene with his canine partner, Bob.  Bob conducted an open air search of and around the car Danielsgale was driving and had two (2) positive alerts for the presence of contraband on the car.  Change of Plea Hr'g Tr., United States v. Danielsgale, 2:15-cr-4 (S.D. Ga. Mar. 23, 2016), ECF No. 25, p. 19.  Judge Wood asked Danielsgale if he disputed Agent Kennedy's testimony, and Danielsgale responded that he did not.  Id. at p. 21.  Danielsgale then answered that he admitted the truth of Agent Kennedy's testimony.  Id.  Likewise, based on the facts set forth in the PSI, other officers arrived at the scene of the traffic stop, including an officer with a drug detection canine officer, during the traffic stop.  (PSI, ¶ 5.)

Finally, the dispatch records[6] Danielsgale submitted show that Officer Whittle-Frazier initiated a traffic stop at the 1500 block of Albany Street in Brunswick, Georgia, at 12:06 a.m. on March 8, 2014, and there had been "5 recent events" for this area.[7]  (Doc. 2, p. 14.)  Officer Whittle-Frazier called the license plate on the vehicle into dispatch and received a response very quickly thereafter.  (Id.)  Officer Whittle-Frazier was at the scene at 12:09:55 a.m.  (Id.)  At 12:11 a.m., another officer (perhaps Officer Trollinger) arrived at the scene of the traffic stop.  (Id. at p. 15.)  Corporal Sapp arrived at the scene at 12:23 a.m., and Officer Kondo arrived at almost the same time.  (Id.)  Officer Whittle-Frazier stated in her report that Officer Kondo arrived at the scene while she was in the process of writing a citation to Danielsgale, and Officer Kondo's canine partner conducted an open air search of the vehicle.  (Id. at p. 12.)  Once the open air search was finished, Officer Whittle-Frazier explained the citation to Danielsgale, and

---

[6]  The dispatch reports were printed on March 12, 2014, (doc. 2, pp. 14–20).  The Court presumes that the Government provided these to Mr. Blackerby prior to the entry of Danielsgale's plea.

[7]  There is nothing before the Court indicating what these "5 recent events" were.

he signed it.  (Id.)  Officer Kondo then advised that his canine had two positive alerts on the vehicle.  (Id.)

From the time Officer Whittle-Frazier initiated the traffic stop and Officer Kondo arrived with his canine partner to conduct an open air sniff, only seventeen (17) minutes had elapsed. Even if Officer Whittle-Frazier could have written Danielsgale a citation within this time, such a time is not unconstitutionally impermissible.  See Purcell, 236 F.3d at 1277–78 ("A detention of fourteen minutes is certainly not unreasonable on its face."); United States v. Hardy, 855 F.2d 753, 760–61 (11th Cir. 1988) (upholding a 50-minute traffic stop until a narcotics-sniffing dog arrived while stating "in distinguishing a true investigative stop from a *de facto* arrest, we must not adhere to rigid time limitations or bright line rules, . . . but must use common sense and ordinary human experience.") (internal citation and punctuation omitted); United States v. Sampson, 388 F. App'x 950, 953 (11th Cir. 2010) (total detention of fifteen to twenty minutes not unreasonable given various interruptions).  The evidence of record is that Officer Whittle-Frazier had not yet completed the mission of her traffic stop—to write Danielsgale a citation— until after Officer Kondo arrived at the scene of the traffic stop and the open air sniff had begun.

There being no evidence that Officer Whittle-Frazier impermissibly extended the traffic stop by having canine Officer Bob conduct an open air sniff while the traffic stop had yet to conclude, Danielsgale fails to show that his Fourth Amendment rights were violated during this traffic stop.  Mr. Blackerby cannot be faulted for filing a non-meritorious motion to suppress.  As a result, Danielsgale's asseveration that Mr. Blackerby rendered ineffective assistance of counsel by failing to file a motion to suppress during the criminal proceedings is without merit.  Even accepting Danielsgale's factual contentions as true, he fails to show that his Fourth Amendment claim is meritorious and that a reasonable probability exists that the outcome of his criminal

proceedings would have been different had Mr. Blackerby filed a motion to suppress. Both prongs of the <u>Strickland</u> test turn on the viability of a motion to suppress in the context of a plea. Mr. Blackerby's performance did not fall outside the range of competence expected of attorneys in this case, because failing to file a non-meritorious motion to dismiss had no effect on Danielsgale's entry of a guilty plea. <u>Arvelo</u>, 788 F.3d at 1348. Stated differently and more succinctly, Danielsgale has not demonstrated deficient performance or the requisite prejudice that he would have wanted to not plead guilty and proceed to trial had Mr. Blackerby filed a non-meritorious suppression motion. Consequently, the Court should **DENY** this portion of Danielsgale's Motion.[8]

### B.     Whether Danielsgale's Plea was Made Knowingly and Voluntarily

Danielsgale asserts he was misinformed of the nature of the constitutional protections he waived, rendering his guilty plea involuntary and not knowing. (Doc. 7, p. 3.) By extension, Danielsgale asserts that, but for Mr. Blackerby's ineffective assistance, he would not have pled guilty to the count in the Information. (<u>Id.</u>)

The Government avers Danielsgale's guilty plea was knowing and voluntary. The Government asserts Judge Wood fully apprised Danielsgale of the nature of the charge and the consequences of entering into a plea. (Doc. 6, p. 12, 13–14.) The Government also asserts Danielsgale cannot claim defects in his plea in an effort to escape his sworn testimony at the Rule 11 hearing. In addition, the Government maintains the record in this case flatly contradicts Danielsgale's contention that he pleaded guilty involuntarily because Mr. Blackerby coerced him to do so. (<u>Id.</u> at p. 15.)

---

[8] Remarkably, the Government did not include an affidavit from Mr. Blackerby or any other information as to this traffic stop in its Response to Danielsgale's Motion. However, the Court has sufficient evidence in the record to conclusively determine that Mr. Blackerby did not render ineffective assistance to Danielsgale.

When a defendant enters a guilty plea pursuant to Rule 11 proceedings, "there is a strong presumption that the statements made during the colloquy are true" and his plea is knowing and voluntary. United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987). "However, a defendant's guilty plea is not knowing and voluntary if he pled guilty on the advice of counsel and that counsel rendered ineffective assistance because his advice was outside of the range of competence demanded of attorneys in criminal cases." United States v. Munguia-Ramirez, 267 F. App'x 894, 897 (11th Cir. 2008) (internal citation omitted).

A defendant must live with what he has told a court under oath. A defendant's sworn testimony to the trial judge in open court is presumed to be truthful. In the context of a plea hearing, the United States Supreme Court has stated that "the representations of the defendant . . . at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73–74 (1977). The defendant's representations are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise. Id.

The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary[,] intelligent choice among the alternative courses open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969). The assistance of counsel received by a defendant is relevant to the question of whether a defendant's guilty plea was knowing and intelligent insofar as it affects the defendant's knowledge and understanding. Cannon v. Jones, Case No. 3:15CV213/MCR/CJK, 2017 WL 990583, at *6 (N.D. Fla. Feb. 7, 2017), report and recommendation adopted, No. 3:15CV213/MCR/CJK, 2017 WL 988663 (N.D. Fla. Mar. 13, 2017) (citing McMann v. Richardson, 397 U.S. 759, 770–71

(1970)).   A movant "alleging prejudice with respect to the plea process must demonstrate a reasonable probability that he would have gone to trial rather than enter the plea, but for counsel's errors." Martinez v. Sec'y, Fla. Dep't of Corr., 684 F. App'x 915, 922 (11th Cir. 2017) (citing Lafler v. Cooper, 566 U.S. 156, 163 (2012)).   "Further, the decision to reject the plea must have been 'rational under the circumstances.'"  Id. (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)).   In a plea situation, the focus of inquiry under the performance prong of Strickland is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"  Hill, 474 U.S. at 56–57 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).   "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Cannon, 2017 WL 990583, at *10 (citing Strickland, 466 U.S. at 689).

        As noted above, Judge Wood informed Danielsgale at the outset of the Rule 11 hearing that the purpose of the hearing was for him to understand the case that was pending against him, the rights he was waiving by pleading guilty, the factual basis for his plea, and whether pleading guilty was what Danielsgale wanted to do after consultation with his attorney.  Change of Plea Hr'g Tr., United States v. Danielsgale, 2:15-cr-4 (S.D. Ga. Mar. 23, 2016), ECF No. 25, pp. 2–3. After Danielsgale swore under penalty of perjury to tell the truth at his Rule 11 hearing before Judge Wood, Danielsgale averred that no one was forcing him to plead guilty and that pleading guilty was what he wanted to do.  Id. at p. 3.  Judge Wood discussed the specific rights Danielsgale was afforded if he chose to persist with a not guilty plea.  Id. at pp. 7–9.  Danielsgale stated he was satisfied with Mr. Blackerby's representation, had no complaints whatsoever, and had spoken with Mr. Blackerby about the facts and law of his case.  Id. at p. 10.  Danielsgale

verified that AUSA Mays' summary of the plea agreement was consistent with the plea he had

signed. <u>Id.</u> at p. 15.  Judge Wood asked Danielsgale whether he wanted to plead guilty because

he was, in fact, guilty of the count in the Information, and he answered in the affirmative.

Danielsgale declared that he understood the rights and privileges he was waiving by pleading

guilty and proceeded to do so.  <u>Id.</u> at p. 17.  Judge Wood determined Danielsgale's guilty plea

was knowing and voluntary.  Special Agent Kennedy then provided a factual basis for

Danielsgale's plea, and Danielsgale agreed with the Government's factual basis.  <u>Id.</u> at pp. 18–

20.  Judge Wood accepted Danielsgale's plea and adjudged him guilty of the charged offense.

<u>Id.</u> at p. 21.

  To be clear, Danielsgale testified in open court that he was satisfied with Mr. Blackerby's

representation, had no complaints whatsoever about that representation, and had discussed the

law and facts of his case with Mr. Blackerby.  It is a fair presumption that Danielsgale and Mr.

Blackerby discussed any potential Fourth Amendment issues that may have been present during

these discussions, and Danielsgale said nothing during his Rule 11 hearing to indicate he wished

to raise a Fourth Amendment issue.  In addition, Mr. Blackerby was able to negotiate a plea with

the Government whereby Danielsgale was sentenced to 96 months' imprisonment and faced a

statutory maximum and Guidelines' range of 120 months' imprisonment as to the count

contained in the Information.  J., <u>United States v. Danielsgale</u>, 2:15-cr-4 (S.D. Ga. June 25,

2015), ECF No. 15; PSI, ¶¶ 59, 60.[9]  Under this agreement, Danielsgale was able to secure a

dismissal of the Indictment in Case Number 2:14-cr-29.  Under count one of that Indictment,

Danielsgale would have been classified as an armed career criminal and been subject to a

---

[9]  The United States Probation Office recommended the Court find Danielsgale had a total offense level
of 27 and a criminal history category of V, which would ordinarily lead to the recommended Guidelines'
range of 120 to 150 months' imprisonment.  However, because the authorized statutory maximum was
lower than the recommended Guidelines' range, Danielsgale's Guidelines' range was 120 months'
imprisonment.  PSI, ¶ 60 (citing U.S.S.G. § 5G1.1(c)(1)).

statutory minimum sentence of 15 years' imprisonment.  PSI, ¶ 61.  Danielsgale's assertion that Mr. Blackerby was ineffective during the plea phase and, had it not been for Mr. Blackerby's ineffective assistance, he would not have pled guilty, is belied by the record before the Court and is without merit.

Danielsgale is not entitled to his requested relief, and the Court should **DENY** his Motion.

## II.    Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Danielsgale leave to appeal *in forma pauperis*.  Though Danielsgale has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").  An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or fact."  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued.  Pursuant to Rule 11 of the Rules Governing Section 2255 cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right.  The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Id.  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."  Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000).  "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims."  Miller-El, 537 U.S. at 336.

Based on the above analysis of the pleadings in this case and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appealability; therefore, the Court should **DENY** the issuance of a Certificate of Appealability. If the Court adopts this recommendation and denies Danielsgale a Certificate of Appealability, Danielsgale is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22."  Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts.  Furthermore, as there are no non-

frivolous issues to raise on appeal, an appeal would not be taken in good faith.  Thus, the Court

should likewise **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **DENY** Danielsgale's 28 U.S.C.

§ 2255 Motion and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate

judgment of dismissal.  I also **RECOMMEND** the Court **DENY** Danielsgale *in forma pauperis*

status on appeal and **DENY** Danielsgale a Certificate of Appealability.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to

file specific written objections within **fourteen (14) days** of the date on which this Report and

Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address

any contention raised in the pleading must also be included.  Failure to do so will bar any later

challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28

U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be

served upon all other parties to the action.  The filing of objections is not a proper vehicle

through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United

States District Judge will make a *de novo* determination of those portions of the report, proposed

findings, or recommendation to which objection is made and may accept, reject, or modify in

whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not

meeting the specificity requirement set out above will not be considered by a District Judge.  A

party may not appeal a Magistrate Judge's report and recommendation directly to the United

States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.  The Court **DIRECTS** the Clerk of

Court to serve a copy of this Report and Recommendation upon Danielsgale and the United States Attorney for the Southern District of Georgia.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 29th day of September, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA